OPINION
Appellant-Mother, Tina Kell, appeals from the Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, filed July 10, 1997, granting appellee, Stark County Department of Human Services, permanent custody of appellant's two minor children.
Appellant is the natural mother of Shequeal Kell, born February 27, 1993 and Brittanie Bess, born July 11, 1995. On July 31, 1995, the Stark County Department of Human Services (SCDHS) filed a permanent custody complaint alleging the two children were dependent and/or neglected and/or abused children. An emergency shelter care hearing was held on August 1, 1995, and the children were placed in the temporary custody of SCDHS.
The adjudicatory hearing took place on October 12, 1995. At that time, SCDHS amended its prayer for permanent custody to a prayer for temporary custody and appellant and the alleged father[1] stipulated that Shequeal and Brittanie were dependent children.
The adjudicatory hearing on October 12, 1995, the parties stipulated to the following facts:
 "Shequeal Kell has lived all his life, except for the past month, in foster care. He testified positive for cocaine at birth. The mother and alleged father have had substance abuse problems in the past.
 Domestic violence between the mother and alleged father has been ongoing. The latest incident of domestic violence occurred on or about June 7, 1995. The alleged father was arrested and is currently incarcerated for this offense. He was sentenced to serve six months. The father was also incarcerated May 12, 1995 through May 22, 1995, and in January 1994 for domestic violence.
 The mother continued to remain with the alleged father after all of these incidents continuing to be victimized."
 "The mother gave birth to Brittanie Bess on July 11, 1995, while she was staying at Quest Deliverance House with her son Shequeal; after the Court of Appeals ordered Shequeal returned to her custody on June 22, 1995. Tina is being asked to leave the program now because she continued to deny any addiction to cocaine, constantly blaming her past use on Gerald Bess and his friends. Tina has no place to live when she must leave Deliverance House program."
 (Finding of Fact Conclusion of Law, filed July 10, 1997, p. 4).
A semi-annual review was held on January 18, 1996. At that time, it was noted that the parents were not maintaining visitation with the children.
On May 14, 1996, SCDHS filed a Motion for Permanent Custody of the two children. The motion asserted the parents failed to comply with the case plan, failed to address their drug problems, and failed to consistently visit the children. An annual review was held on July 12, 1996, at which time it was noted that the parents had not been consistent with visitation. The court entered a finding that neither parent had complied with the case plan and that all objectives of the case plan still needed to be met.
The hearing on the Motion for Permanent Custody was conducted on January 16, 1997. During her cross-examination, appellant testified she currently lived in a one-bedroom apartment and had lived there for one year. Appellant testified the alleged father had lived with her off and on over the past year and most recently within the past month. Appellant further testified she had been provided a case plan by Kelli Williams, the SCDHS family service worker. She stated she knew she was required to go to Quest for substance abuse problems. Appellant added, after an evaluation at Quest, she had been referred to treatment and instructed to submit urine drops, but she admitted she had not complied with the required urine drops. Appellant further claims to have attended Renew for counseling on both domestic violence and substance abuse. However, Denna Hargrove, the program director of Renew, established appellant had never completed treatment there, and had, in fact, only attended approximately two sessions. Appellant's case at Renew was closed for non-compliance on April 10, 1996. Ms. Hargrove stated appellant again contacted Renew in July, 1996, after she had been arrested for DUI, but was not readmitted for treatment. Ms. Hargrove stated appellant admitted to cocaine usage and domestic violence between herself and the father.
Appellant testified she had started the Goodwill Parenting, but never completed the program. She also admitted she had been convicted of petty theft in the past year.
Kelli Williams testified she had worked with appellant and the father since the end of 1994. She testified appellant was required to undergo substance abuse treatment and parenting classes. She stated appellant had been referred to Quest and Renew for substance abuse treatment, but had failed to complete either program. The Quest records were submitted into evidence and the treatment plan for substance abuse.
Ms. Williams also testified the case plan required appellant to attend a battered women's support group, but appellant admitted she had attended only a few sessions of the support group. Elizabeth Stokes of the Domestic Violence Project established appellant never contacted the battered women's support group.
Ms. Williams noted appellant admitted the father provided her with drugs and she felt she could not get help for her drug problem because of the father. Ms. Williams added appellant told her both she and the father used crack cocaine on a regular basis.
Despite being given the opportunity for ample visitation, appellant failed to take advantage of it, or left early when visits did occur. In a year and a half time period, appellant visited the children 18 times.
Although appellant began the Goodwill Parenting program, she failed to complete the program. Linda Temsic, a parenting instructor from Goodwill Parenting, testified appellant missed the first day of class and was eventually terminated due to excessive absences.
Colleen Miller, a parenting social worker for Goodwill Parenting, also testified appellant was terminated from the parenting program. Ms. Miller further stated appellant had contacted her to enroll again, but was denied a space in the program due to her commencement of and termination from three prior class seminars.
On direct examination, appellant stated she had a five year old daughter, who is in the custody of her ex-husband. She explained the reasons she missed visitation with her two children was due to lack of money or missing the bus, which resulted in her walking to Harmony House thereby arriving late for the visits. She added illness had prevented her from attending some visits. She denied having a drug problem and stated she did not need treatment at Quest. She also denied any domestic violence problem between herself and the father despite the fact he had been physically abusive toward her and she was afraid of him. Appellant also stated she really did not need Goodwill Parenting, except as a refresher.
Kelli Williams testified in regards to the best interest of the children. She stated both children were bi-racial; Shequeal was almost four years old, and Brittanie was 18 months old. Neither child exhibited any special physical, mental, or emotional needs. Ms. Williams also testified neither child exhibited bonding with any biological member of their family. Visitation between the parents had been scarce and had not gone well when it did take place. Ms. Williams opined in order to provide permanency for the children, permanent custody needed to be awarded to SCDHS.
Ms. Williams stated Brittanie's foster family was interested in adopting her. Also, both Brittanie's foster parents and the other sibling's foster parents were interested in adopting Shequeal. Ms. Williams testified the placement with either parent would not be in the children's best interest due to the parent's continued drug usage, domestic violence and lack of completion of the case plan.
Via Judgment Entry dated July 10, 1997, the trial court terminated appellant's parental rights and awarded permanent custody of the two children to SCDHS. The trial court filed Findings of Fact and Conclusions of Law relative to the July 10, 1997 Judgment Entry on the same day.
It is from the July 10, 1997 Judgment Entry appellant prosecutes this appeal raising the following assignment of error:
 THE RULING OF THE TRIAL COURT GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
In her sole assignment of error, appellant contends the trial court's granting permanent custody of her two minor children to SCDHS was against the manifest weight of the evidence. We disagree.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
The relevant statute is R.C. 2151.414, which provides, in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
In determining the best interest of a child, R.C. 2151.414(D) states:
 (D) . . . the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Kelli Williams, the DHS social worker, testified neither child exhibited any special physical, mental, or emotional needs. Further, Williams stated that Brittanie's foster parents were willing to adopt her, and were also interested in adopting Shequeal. Additionally, Williams noted that the children's other sibling's foster parents were also interested in adopting Shequeal. Neither child exhibited bonding with either parent or any other biological member of their family.
We find the trial court's finding that it was in Shequeal and Brittanie's best interests to grant permanent custody to DHS is not against the manifest weight of the evidence.
However, a best interest determination is not sufficient to grant permanent custody of a child to an agency and divest parents of their parental rights. In the instant case, the trial court further found, pursuant to R.C. 2151.414(B)(1), that Shequeal and Brittanie were not abandoned or orphaned and could not be placed with their parents within a reasonable time or should not be placed with their parents.
The record reveals the case plan required appellant to undergo substance abuse treatment and attend parenting classes. Although appellant completed an assessment at Quest and had been referred to treatment for her drug abuse problem, appellant failed to complete the recommended treatment.
Additionally, appellant had been referred to a battered women's support group. Appellant told Williams she only attended a few sessions, however, Elizabeth Stokes established appellant had never contacted with the support group.
Further, appellant began the Goodwill Parenting program, but failed to complete it. Linda Temsic confirmed appellant was terminated from the class due to excessive unexcused absences.
Ms. Williams stated appellant told her the father was abusive toward her and she was afraid of him. As a result of injuries caused by the father, appellant had to go the hospital. Ms. Williams further stated appellant told her the father provided her with drugs and she could not resolve her drug problem because of the father, with whom she used crack cocaine on a regular basis.
In regards to appellant's visitation with the children, despite being given the opportunity for ample visitation, appellant failed to take advantage of it. In a year and a half time period, appellant only visited the children 18 times and often left the visits early when the visits did occur. When visits did occur, problems arose. Both children were anxious and never readily went to either parent. Both children would go to a social worker with a problem and cling to the social worker in order to avoid going to appellant. When appellant was alone with the two children, she was completely overwhelmed.
In light of the foregoing, we find the trial court's finding that Shequeal and Brittanie could not be placed with appellant within a reasonable time or should not be placed with appellant is not against the manifest weight of the evidence.
Appellant's sole assignment of error is overruled.
The Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, is affirmed.
By: Hoffman, Sr., J., Farmer, P.J. and Wise, J. concur.
[1] The alleged father filed a separate appeal. See, In theMatter of: The Kell/Bess Children (March 23, 1998), Stark App. No. 97CA0278, unreported.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed. Costs assessed to appellant.